**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-20591**
_____

**RAUL PALACIOS ROMAN, _ET AL._,**

**Plaintiffs-Appellants,**

**versus**

**AVIATECA, S.A.,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(96-CV-142)**
_____

June 27, 1997

Before REAVLEY, KING, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Raul Palacios Roman, _et al._ (Plaintiffs), appeal from the denial of their motion to remand to state court for lack of subject matter jurisdiction and the subsequent dismissal of their action for lack of standing, under TEX. (CIV. PRAC. & REM.) CODE ANN. § 71.031 (West 1986).  In the light of our court's very recent decision in _Torres v. Southern Peru Copper Corp._, 113 F.3d 540 (5th Cir. 1997),

---

[*]      Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the district court did not have jurisdiction.  Accordingly, we **REVERSE** and **REMAND** with instructions to remand to state court.

                                    I.

AVIATECA, S.A., is a Guatemalan-based international air carrier that operates regularly scheduled flights to cities in the southern United States.  In August 1995, one of its flights crashed while en route from Guatemala to El Salvador, killing all 58 passengers and seven crew-members.

Plaintiffs are the personal representatives and next of kin of five of the passengers killed in the crash.  In September 1995, less than two months after the crash, they commenced this wrongful death action in Texas state court, alleging "willful misconduct, willful negligence and gross negligence" on the part of AVIATECA in the maintenance and operation of the aircraft.  Because the crash did not take place in Texas, and because the five decedents were citizens of a foreign country (Nicaragua), Plaintiffs had to establish, *inter alia*, that "equal treaty rights"[1] exist between the United States and Nicaragua in order to maintain their action in a Texas state court.  TEX. (CIV. PRAC. & REM.) CODE ANN. § 71.031

---

[1]     Equal treaty rights between the United States and Nicaragua exist if "treaty provisions" provide that citizens of the United States have "'free and open access to the courts of justice'" in Nicaragua and that citizens of Nicaragua have those same rights in the United States. ***Dow Chem. Co. v. Alfaro***, 786 S.W.2d 674, 675 n.2 (Tex. 1990) (quoting Treaty of Friendship, Commerce, and Navigation, July 10, 1851, U.S.-Costa Rica, art. VII, para. 2, 10 Stat. 916, 920).

- 2 -

(West 1986).  Plaintiffs so alleged in their original and amended complaints.

In January 1996, AVIATECA removed this action to federal court on the ground that Plaintiffs' claims gave rise to federal question jurisdiction.  *See* 28 U.S.C. §§ 1331, 1441(a).  AVIATECA contended that, because of § 71.031's requirement of equal treaty rights, Plaintiffs' claims depended on construction of United States treaties.  It also asserted that Plaintiffs' claims raised questions of foreign relations that are incorporated into federal common law.

Plaintiffs moved to remand for lack of federal question jurisdiction.  *See id.* § 1447(c).  Before the court could rule on that motion, AVIATECA moved to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), on the ground that Plaintiffs lacked standing under § 71.031 because they could not show the existence of equal treaty rights between the United States and Nicaragua.  It also moved to dismiss on the ground of *forum non conveniens*.

In May 1996, the district court denied Plaintiffs' motion to remand and granted AVIATECA's motion to dismiss for lack of standing, concluding that equal treaty rights do not exist between the United States and Nicaragua.  AVIATECA's motion to dismiss for *forum non conveniens* was denied as moot.

II.

Plaintiffs challenge both aspects of the district court's ruling. First, they contend that the district court erred in denying their motion to remand because, they maintain, none of their claims triggered § 1331 federal question jurisdiction. Because we conclude that the district court did not have subject matter jurisdiction, we need not address the other contentions, including whether equal treaty rights exist between the United States and Nicaragua.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant ...." 28 U.S.C. § 1441(a). Of course, § 1441 is to be strictly construed, and a defendant who seeks to sustain removal bears the burden of establishing federal subject matter jurisdiction. *See* **Rivet v. Regions Bank of La., F.S.B.**, 108 F.3d 576, 582 (5th Cir. 1997), *petition for cert. filed* (U.S. June 11, 1997) (No. 96-1971).

No authority need be cited for the rule that federal courts have limited subject matter jurisdiction. The Supreme Court has explained that federal courts "possess only that power authorized by Constitution and statute.... It is to be presumed that a cause lies outside this limited jurisdiction, ... and the burden of establishing the contrary rests upon the party asserting jurisdiction...." **Kokkonen v. Guardian Life Ins. Co. of Am.**, 114 S. Ct. 1673, 1675 (1994) (citations omitted). Although the

- 4 -

Constitution authorizes federal courts to hear a variety of cases, U.S. CONST. art. III, § 2, in this case we must determine whether Plaintiffs' action falls within the district court's federal question jurisdiction.

Federal courts are empowered to hear "all civil actions arising under the Constitution, laws, or treaties of the United States". 28 U.S.C. § 1331. Along this line, the Court has held that "laws" includes federal common law as well as federal statutory law. *See **Illinois v. City of Milwaukee***, 406 U.S. 91, 100 (1972). Determining when a case or controversy "arises under" federal law, however, is not an easy task. As the Supreme Court has noted, "[T]he statutory phrase ... has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." ***Franchise Tax Bd. v. Construction Laborers Vacation Trust***, 463 U.S. 1, 8 (1983). For purposes of this opinion, "federal law(s)" refers collectively to all the possible bases for § 1331 jurisdiction.

A straightforward and frequently cited definition of "arising under" is Justice Holmes' statement: "A suit arises under the law that creates the cause of action." ***American Well Works Co. v. Layne & Bowler Co.***, 241 U.S. 257, 260 (1916). In addition, the Court has held that a case may arise under federal law where "the vindication of a right under state law necessarily turn[s] on some

construction of federal law". ***Franchise Tax Bd.***, 463 U.S. at 9; *see also **Merrell Dow Pharm., Inc. v. Thompson***, 478 U.S. 804, 808-09 (1986); ***Gully v. First Nat'l Bank***, 299 U.S. 109, 112-14 (1936); ***Smith v. Kansas City Title & Trust Co.***, 255 U.S. 180, 200-01 (1921).

This latter category of cases presents what has been called the "litigation-provoking problem", ***Textile Workers Union v. Lincoln Mills***, 353 U.S. 448, 470 (1957) (Frankfurter, J., dissenting) — the "presence of a federal issue in a state-created cause of action". ***Merrell Dow***, 478 U.S. at 809-10. To invoke federal jurisdiction in this manner, a "right or immunity created by the Constitution or laws of the United States" must be an "essential" element of the plaintiff's cause of action. ***Gully***, 299 U.S. at 112; *see also **Franchise Tax Bd.***, 463 U.S. at 13. The federal element must be both "substantial" and "disputed", ***Franchise Tax Bd.***, 463 U.S. at 13; and it must be disclosed on the face of the complaint. ***Id.*** at 9-12; ***Gully***, 299 U.S. at 113.

For the case at hand, federal law, including any treaty of the United States, does not create the cause of action. In their complaint, Plaintiffs specifically disavow any reliance on federal law or federal remedies. In addition, this case is not governed by the Convention for the Unification of Certain Rules Relating to International Transportation by Air (Warsaw Convention), because

- 6 -

Nicaragua has not signed or ratified it. AVIATECA does not dispute this conclusion.

Therefore, this case may "arise under" federal law only if there is a substantial question of federal law on which Plaintiffs' right to recover in their wrongful death action necessarily turns. AVIATECA contends that the determination of whether equal treaty rights exist between the United States and Nicaragua is such a federal question because construction of treaties is required. It maintains also that Plaintiffs' claims implicate the foreign relations of the United States, a matter that is controlled by federal common law.

A.

First, however, we dispense with Plaintiffs' contention that the well-pleaded complaint rule forecloses federal question jurisdiction. Under that rule, whether a case "arises under" federal law

> must be determined from what necessarily
> appears in the plaintiff's statement of his
> own claim in the [complaint] unaided by
> anything alleged in anticipation of avoidance
> of defenses which it is thought the defendant
> may interpose.

See *Franchise Tax Bd.*, 463 U.S. at 9-10 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)). Plaintiffs' contend that no federal question appears on the face of their complaint because they specifically disavow reliance on federal law or federal remedies.

However, Plaintiffs originally maintained their action in Texas state court under § 71.031 and, as such, alleged the existence of equal treaty rights. In other words, they specifically invoked that federal issue in their complaint. That issue may not be "essential" or "substantial" enough to make this action arise under federal law, but it does foreclose any attempt to remand under the well-pleaded complaint rule. This result, we note, is entirely consistent with both the rule and the cases interpreting § 1331. *See* **Franchise Tax Bd.**, 463 U.S. at 14 (finding federal issue to be "clear on the face of [the] well-pleaded complaint" but finding no § 1331 jurisdiction).

## B.

Any inquiry into whether § 71.031's "equal treaty rights" requirement confers "arising under" jurisdiction on district courts is foreclosed by our very recent decision in **Torres v. Southern Peru Copper Corp.**, 113 F.3d 540 (5th Cir. 1997). In **Torres**, approximately 700 Peruvian citizens, pursuant to § 71.031, brought an action against a mining corporation and others in Texas state court, claiming state law causes of action. **Id.** at 541. Defendants removed on several grounds. One removal-basis was that § 71.031 triggered federal question jurisdiction, **id**. at 541-42; but, our court rejected this contention out of hand: "The mere fact that § 71.031 requires a Texas state court to examine treaties

- 8 -

to determine whether a plaintiff has standing is insufficient by itself to create federal jurisdiction." *Id.* at 542.

Of course, we are bound by *Torres*. Regardless of how one characterizes the equal treaty rights requirement, once their existence *vel non* is decided, their importance disappears. They are irrelevant to Plaintiffs' substantive right to recover. A favorable ruling on the equal treaty rights issue does not guarantee that Plaintiffs will be successful in holding AVIATECA liable in a Texas forum. Likewise, a dismissal for lack of equal treaty rights does not *per se* prevent Plaintiffs from successfully prosecuting a cause of action against AVIATECA in a different forum.

In sum, "equal treaty rights" are neither a substantial nor an essential element of Plaintiffs' action. As held in *Torres*, removal on that basis was improper.

### C.

In the alternative, citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964), AVIATECA contends that removal was proper because claims in this case implicate the foreign relations of the United States, a matter that is controlled by federal common law. As noted in *Torres*, "the Supreme Court has authorized the creation of federal common law in the area of foreign relations." *Torres*, 113 F.3d at 542 n.7 (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)).

- 9 -

*Torres* concluded that the plaintiffs' claims in that case did implicate important foreign policy concerns such that federal question jurisdiction existed; the defendant mining corporation was critical to the Peruvian economy and the Peruvian government had participated "substantially" in the actions for which that corporation was being sued. *Id.* at 543. The action therefore "str[uck] at vital economic interests [and] at Peru's sovereign interests by seeking damages for activities and policies in which the government actively has been engaged". *Id.*

The facts of this case, however, are markedly different. There is no evidence that AVIATECA, a Guatemalan corporation, is "critical" to that country's economy (if that were enough). In addition, there is no evidence that the government of Guatemala (or any other country) is involved in the activities for which AVIATECA, a privately owned corporation, is being sued. Plaintiffs' action, therefore, does not strike at vital economic or sovereign interests of any nation. *See* *Marathon Oil Co. v. Ruhrgas, A.G.*, No. 96-20361, 1997 WL 31091, at *3-4 (5th Cir. June 10, 1997) (refusing to find federal question jurisdiction based on *Torres* because vital economic and sovereign interests of foreign nation not implicated).

Nor does *Sabbatino* support AVIATECA's contention. That case involved an action by an instrumentality of the Cuban government against an American commodities broker for conversion of a sugar

- 10 -

shipment. *Id.* at 401-06. Cuba claimed title to the sugar by virtue of a law giving the Cuban President power to nationalize certain property by forced expropriation. *Id.* at 401. At issue was whether the act of state doctrine, which "precludes the courts of this country from inquiring into the validity of the public acts [that] a recognized foreign sovereign power [has] committed within its own territory", prohibited challenging Cuba's title, which would necessarily question the validity of an act of the Cuban government. *Id.* at 401. In discussing the nature of that doctrine, the Court stated:

> [W]e are constrained to make it clear that an issue concerned with a basic choice regarding the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law....

*Id.* at 425.

Taking this language in context, we read *Sabbatino* to mean that cases substantially implicating the foreign relations of the United States, such as those cases involving the act of state doctrine, are controlled by federal common law. This case does not implicate foreign relations, nor does it involve the act of state doctrine. The determination of whether the courts of the United States are open to citizens of Nicaragua and *vice-versa* does not touch upon the "competence" of the Executive Branch to "order[] our relationships" with Nicaragua, nor does it call into question the

validity of any act of the government of Nicaragua or any other country.  Plaintiffs' claims simply do not implicate this enclave of federal common law.  Therefore, AVIATECA could not remove Plaintiffs' action on that basis.

### III.

For the aforementioned reasons, we **REVERSE** the judgment of the district court and **REMAND** with instructions to remand to state court.

*REVERSED AND REMANDED*